*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DENNIS JAY CLARK,

Defendant-Appellant.

UNPUBLISHED
July 21, 2026
10:18 AM

No. 373610
Lenawee Circuit Court
LC No. 2024-021696-FC

Before: MALDONADO, P.J., and RIORDAN and YOUNG, JJ.

PER CURIAM.

Defendant, Dennis Jay Clark, appeals as of his right his jury-trial convictions of two counts of second-degree criminal sexual conduct (CSC-II) (person under 13), MCL 750.520c(1)(A); one count of third-degree criminal sexual conduct (CSC-III) (person 13 through 15), MCL 750.520d(1)(A); one count of assault with intent to commit CSC-II, MCL 750.520g(2); and one count of fourth-degree criminal sexual conduct (CSC-IV) (person 13 through 15), MCL 750.520e(1)(a). Lenawee County Circuit Court sentenced Clark as a fourth-offense habitual offender, MCL 769.12, to concurrent terms of 33 to 60 years' imprisonment for each CSC-II, CSC-III, and assault conviction, and 32 months to 15 years for the CSC-IV conviction, with credit for 279 days served. On appeal, Clark argues he is entitled to a new trial or resentencing because (1) the trial court erred by admitting Clark's prior CSC convictions under MRE 403 and MCL 768.27a, (2) defense counsel was ineffective by failing to object to the admission of vouching testimony, and (3) the trial court imposed an upward departure sentence without making appropriate findings as to proportionality. We affirm Clark's convictions but remand for resentencing.

## I. FACTUAL BACKGROUND

This case arises out of repeated sexual contact between Clark and RM (the victim), from October 2020 through February 11, 2023. Clark lived next door to the victim's father in Raisin Township, Lenawee County. The victim, along with her mother, brother, and two half-sisters, lived with her father from 2008 to 2012, for a four-month period in 2016, and from 2020 to 2021.

At first, the victim's father told his wife and daughters to stay away from Clark because the neighbors warned about Clark being a registered sex offender. However, in 2008, Clark helped the victim's father get a job with Clark's employer, and they became friends. The victim's father admitted to being a drug addict and that his family was financially strained, so Clark would buy cell phones and Christmas presents for the victim and her siblings. The children would go over to Clark's house frequently to play with virtual reality gaming systems, laptops, and cell phones. Clark also bought the children school clothes, shoes, and a bedroom set for the victim. On cross-examination, the victim's father admitted he allowed the kids to go to Clark's house to get food, and he would also ask Clark for money.

The victim testified that her earliest memory of Clark touching her inappropriately occurred when she was 12 years old in October 2020. She was sitting on Clark's living room couch while they used his laptop computer to pick out a bed frame for her. After picking a bed frame out, Clark told her she needed to repay him for it because it was expensive. He then tried to put his hands down her pants but could not because it had a lot of buttons. Instead, he put his hands up the victim's shirt, put his mouth on her breast, and used his tongue to lick her breast.

Two years later, in the summer of 2022, Clark committed what the victim considered to be the "worst" incident of sexual assault. The victim, then age 14, was at Clark's house, sitting in a chair in the living room, when Clark was on his knees and pulled her legs apart. He pulled the victim's pajama pants and underwear down and put his tongue inside her vagina. Clark eventually stopped when the victim's brother came over.

Clark also touched the victim on other occasions when she was 13, 14, and 15. When she visited Clark's home, he would give her a hug and "tap" her buttocks, squeeze her thigh, or brush past her breasts. Mostly, he would squeeze her very tight and grab her inner thigh. The victim testified that these incidents would happen two or three times a week. The victim's brother, SM, also testified that he saw Clark hugging the victim tightly and grabbing in between her thighs more than once when she was 13 and 14 years old.

In early February 2023, the victim wrote an essay that revealed she was being sexually abused by her neighbor "for years now" because she needed to "help pay him back for everything." The victim testified that she intentionally wrote the essay because she was tired of being in contact with Clark and she "knew that [her teacher] would say something because they have to." The victim's teacher shared the essay with the school counselor, Karen Cheney, who testified that she reviewed the essay, spoke with the victim and her sister, and reported the allegations of abuse to Children's Protective Services (CPS) in February 2023.

On February 11, 2023, CPS notified Raisin Township Police of the abuse allegations. On February 15, 2023, police officer David Low interviewed the victim. Officer Low testified that "[w]hen information is sent to [CPS] and they feel that there's enough information there to warrant police investigation, then they refer that to us." He also explained that because of the victim's delayed report, no physical evidence could be gathered. However, Officer Low testified that physical evidence was not required to bring charges for these types of crimes, and that the victim's allegations were sufficient. He testified that he subsequently investigated and found Clark had been on the Michigan Sex Offender Registry since 1994.

Officer Low submitted the case to the Lenawee Prosecutor's Office. Clark was arrested on November 3, 2023, and charged, as a fourth-offense habitual offender, with two counts of CSC-II, one count CSC-III, one count of assault with intent to commit CSC-II, and one count of CSC-IV.

Before trial, the prosecution filed a notice of intent to introduce evidence of prior incidents of CSC involving minors under MCL 768.27a. The notice detailed that Clark was previously convicted of six counts of CSC I and one count of CSC II against his stepdaughters in 1994. Defense counsel objected to the introduction of these charges at trial on the grounds that this evidence of other acts was only offered for propensity and no other appropriate purpose. In response to defense counsel's objection, the prosecutor moved the trial court to admit the other acts under MCL 768.27a and MRE 404(b).

At the motion hearing, the prosecutor argued that (1) the other acts were similar in nature to the charges Clark now faced; (2) a 30-year gap between the acts was the only factor weighing against admissibility but years of delay was not necessarily dispositive; and (3) the trial court should consider intervening acts, during which Clark was incarcerated and registered as a sex offender, making it harder for him to reoffend.

The trial court agreed and allowed the evidence of Clark's prior CSC convictions at trial. The prosecution called Clark's two stepdaughters at trial to testify about the events from 1993 that formed the basis of Clark's prior CSC convictions. One stepdaughter, ND, testified that Clark performed cunnilingus on her, made her perform fellatio, and rubbed his penis between her vaginal lips when she was nine years old. ND testified that these acts occurred multiple times. The second stepdaughter, KS, testified that Clark performed cunnilingus on her and made her fellate him multiple times. He also rubbed his penis between her legs to the point where she was "raw" when KS was seven or eight years old.

Clark testified at trial and denied committing any inappropriate acts, and said the victim was never in his home alone with him. He stated he underwent different types of therapy while he was incarcerated for 10 years and did not want to repeat the past. Clark developed certain rules for himself, such as not entering into any relationship with a woman who had children and "never let[ting] a kid come to [his] house by themselves . . . ." The jury found Clark guilty on all counts.

At sentencing, the guidelines' recommendation was calculated to be 36-142 months for Counts I and II, 51-170 months for Count III, 7-46 months for Count IV, and 0-34 months for Count V. After both parties agreed to the accuracy of the guidelines' recommendation, the trial court noted that

> in determining the appropriate sentence in this case, or these cases, the Court has considered the seriousness of the offense, your history, the principle of proportionality, the statutory penalty, the cost of confinement, the sentencing guidelines, the report and the recommendation of the Probation department, as well as what has been said upon the record at this hearing.
>
> The criteria and reasons for the sentence are the nature and gravity of the offense, the discipline appropriate to its commission, deterrence against repetition by you

and by others, the potential for affirmation, vindication for law and the protection of society.

The trial court sentenced Clark as a fourth-offense habitual offender, MCL 769.12, to concurrent terms of 33 to 60 years' imprisonment for each CSC-II, CSC-III, and assault conviction, plus 32 months to 15 years for the CSC-IV conviction, with credit for 279 days served. This appeal followed.

## II. ANALYSIS

Finding no errors warranting reversal, we affirm Clark's convictions.

## A. OTHER ACTS EVIDENCE WAS PROPERLY ADMITTED UNDER MCL 768.27a

Clark argues that the trial court abused its discretion by not conducting a complete analysis of the *Watkins*[1] factors in its MRE 403 balance under MCL 768.27a, and as a result, improperly admitted Clark's prior bad acts from 1993. We disagree.

This Court reviews a trial court's decision to admit evidence for an abuse of discretion. *People v Adair*, 452 Mich 473, 485; 550 NW2d 505 (1996). "The trial court abuses its discretion when its decision is outside the range of principled outcomes." *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012). "A decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019). Whether a rule of evidence bars the admission of evidence is a question of law reviewed de novo. *People v McDaniel*, 469 Mich 409, 412; 670 NW2d 659 (2003). A challenge to the erroneous admission of evidence does not constitute grounds for reversal unless it is more probable than not that the error was outcome determinative. *King*, 297 Mich App at 472; *People v Krueger*, 466 Mich 50, 54; 643 NW2d 223 (2002).

The trial court appropriately considered the *Watkins* factors. The non-exhaustive *Watkins* factors include

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. *Watkins*, 491 Mich at 487-488.

The trial court generally focused on three *Watkins* factors. Starting with the factors of temporal proximity and intervening acts, the trial court noted that Clark's prior act took place nearly 30 years ago but also reasoned that Clark was incarcerated for 10 of those years, "making it impossible for him to assault" any minors. Further, the trial court correctly recognized that a significant time gap is not dispositive of exclusion where the other acts and instant acts are substantially similar.

---

[1] *People v Watkins*, 491 Mich 450; 818 NW2d 296 (2012).

In *People v Solloway*, 316 Mich App 174, 195; 891 NW2d 255 (2016), this Court upheld admission of other-acts evidence despite a 12-year gap between the prior and instant offenses because the acts were highly similar. This Court concluded that the strong factual similarities outweighed the temporal gap: "While the acts occurred some years apart, the temporal divide between their occurrences, standing alone, does not preclude the evidence's admission." *Id*. at 195.

However, in *People v Hoskins*, this Court held that a 17-year gap supported exclusion because the similarities between the prior acts and the charged offense were "far less conspicuous than in *Solloway*." 342 Mich App 194, 206; 993 NW2d 48 (2022). Specifically, defendant Solloway was an adult in a domestic-type relationship with a minor in both cases, but the age gap with his later victim was 25 years, compared to five years with the prior victim. *Id*. at 205. The *Hoskins* Court found this dissimilarity "pertinent, particularly because the defendant was 18 years old at the time" of the earlier offense. *Id*. Thus, while the defendant's conduct shared similarities, this Court concluded that temporal proximity supported exclusion given that the similarities between the offenses were less evident than in *Solloway*. *Id*. at 207.

Clark's case is more like *Solloway* than *Hoskins*. Like in *Solloway*, the victims of Clark's prior acts and charged offenses were of similar age at the time of the acts, as the stepdaughters were 7-9 years old and 9-14 years old, while the victim was 12-14 years old; Clark lived in close proximity and hosted the victims in his home; and all of the victims were assaulted in a similar way: Clark performed cunnilingus on them. Again, like *Solloway*, the assaults in Clark's prior act and charged offense occurred over multiple incidents.

Moreover, other-acts evidence is properly admitted under MRE 403 if the court recognizes that other-acts evidence is logically prejudicial "but would not be *unfairly* prejudicial because . . . the evidence's propensity inferences weigh in favor of the evidence's probative value, not its prejudicial effect." *People v Berklund*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367568); slip op at 11. The trial court did not abuse its discretion when it concluded that the evidence's probative value was not substantially outweighed by the danger of unfair prejudice.

## B. OFFICER LOW'S TESTIMONY DID NOT AMOUNT TO VOUCHING AND DEFENSE COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO OBJECT ON THAT BASIS

Clark next argues that Officer Low's lay testimony impermissibly vouched for the victim's credibility, and consequently, defense counsel was ineffective for failing to object to the statement. We disagree.

Whether a defendant received ineffective assistance of trial counsel presents a mixed question of fact and constitutional law. *Strickland v Washington*, 466 US 668, 698; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). "A judge must first find the facts, then must decide whether those facts establish a violation of the defendant's constitutional right to the effective assistance of counsel." *People v Grant*, 470 Mich 477, 484; 684 NW2d 686 (2004). "We review the trial court's factual findings for clear error." Clear error exists if the reviewing court is left with a definite and firm conviction that the trial

court made a mistake." *Armstrong*, 490 Mich at 289. Questions of constitutional law are reviewed de novo. *Id*.

"It is generally improper for a witness to comment or provide an opinion on the credibility of another witness, because credibility matters are to be determined by the jury." *People v Douglas*, 496 Mich 557, 583; 852 NW2d 587 (2014) (quotation marks and citation omitted); *People v Musser*, 494 Mich 337, 348-349; 835 NW2d 319 (2013). However, MRE 701 permits lay opinion testimony when it is "(a) rationally based on the witness's perception" and "(b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." This includes testimony from police officers that "explain[] the steps of their investigations from their personal perceptions." *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012).

In *Heft*, this Court distinguished between testimony that explains an officer's investigative process and testimony that impermissibly opines on a defendant's guilt. There, the officer testified that "[b]ased on [the defendant's] statement and the culmination of loud banging noises, . . . I didn't think that [the defendant] was being truthful, so I had him have a seat in the rear of my vehicle." *Id*. at 82. This Court concluded that the officer's statement was admissible under MRE 701 because the statement did not opine about the defendant's guilt; rather, the statement explained the steps of police investigation. *Id*. at 83.

By contrast, in *People v Hawkins*, 507 Mich 949; 959 NW2d 179 (2021), our Supreme Court identified impermissible lay opinion testimony. There, the detective testified that the complainant's account "seemed authentic to [him]" and that if the detective "can't prove that [the abuse] didn't happen, then there's a good possibility that it did." *Id*. at 179-180. Unlike in *Heft*, this testimony did not explain investigative steps; instead, it endorsed the complainant's credibility and "shift[ed] the burden of proof to defendant to prove his innocence." *Id*. at 180.

Here, Officer Low's statement falls under the "investigative steps" testimony in *Heft*. Notably, Officer Low testified that "[w]hen information is sent to [CPS] and they feel that there's enough information there to warrant police investigation, then they refer that to us." His statement was not an opinion about the credibility of any witness; rather, it described the steps of investigating child sexual abuse cases by explaining the threshold of information that prompts a referral, which falls under MRE 701.

Clark has not established that a plain error occurred. As such, since Officer Low did not provide vouching testimony, defense counsel was not ineffective for failing to make a futile objection. *People v Isrow*, 339 Mich App 522, 532; 984 NW2d 528 (2021) ("[C]ounsel's failure to object to the prosecutor's statement . . . did not amount to ineffective assistance of counsel because objecting to this statement would have been futile.").

## C. THE TRIAL COURT FAILED TO ARTICULATE REASONS TO SUPPORT A DEPARTURE SENTENCE

Though we find no errors warranting reversal, we agree with the parties' stipulation that the trial court did not court explain why an upward departure was appropriate for Counts I-IV, as

-6-

mandated by MCR 6.425(D)(1)(e). Accordingly, we conclude that Clark is entitled to resentencing.

"A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). When reviewing a sentence for reasonableness, the standard of review is for an abuse of discretion. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). "A trial court abuses its discretion if the imposed sentence is not proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Ventour*, 349 Mich App 417, 429; 27 NW3d 660 (2023) (quotation marks and citation omitted). "For sentences that depart from the guidelines, [] there is no presumption of proportionality." *People v Brcic*, ___ Mich App ___, ___; ___ NW3d ___ (2026) (Docket Nos. 362727 and 366230); slip op at 10.

Here, Clark was sentenced as a fourth-offense habitual offender and subject to a 25-year minimum sentence pursuant to MCL 769.12(1)(a). Thus, Clark's sentence to a minimum term of 33 years' imprisonment was an upward departure. However, in arriving at this sentence, the trial court did not mention it was imposing an upward departure from the mandatory minimum, nor did it explain why an upward departure was "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Ventour*, 349 Mich at 429 (quotation mark and citation omitted). Rather than substitute our own rationale, this Court is obligated to vacate Clark's sentence and remand for resentencing. *People v Mason*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367687); slip op at 4. On remand, if the trial court departs from the guidelines on resentencing, it must articulate adequate reasons to support a departure and must justify the extent of the departure. See *People v Smith*, 482 Mich 292, 295; 754 NW2d 284 (2008) (concluding that "the trial judge must explain why the reasons for the departure that he articulated warranted a drastic departure from the highest minimum available").[2]

### III.    CONCLUSION

We affirm Clark's convictions. However, Clark has established that the trial court failed to articulate reasons to support an upward departure sentence, and we therefore remand for resentencing. We do not retain jurisdiction.

/s/ Allie Greenleaf Maldonado
/s/ Michael J. Riordan
/s/ Adrienne N. Young

---

[2] The parties do not discuss whether the "departure" to be explained is the one from the mandatory minimum or the guidelines. According to one decision from this Court, the answer is a departure from the mandatory minimum. *People v Gordon*, unpublished per curiam opinion of the Court of Appeals, issued July 23, 2019 (Docket No. 343352), p 3 ("[T]he required 25-year minimum sentence is the relevant sentence for establishing the existence of a departure and marking the extent of the departure.").